IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM SMITH, #S15953, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-01297-NJR |
| | ) |
| C/O KNIGHT, | ) |
| C/O JOHN DOE 1, | ) |
| C/O JOHN DOE 2, and | ) |
| WARDEN ANTHONY WILLS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Plaintiff Adam Smith, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center, filed this civil rights action *pro se* under 42 U.S.C. § 1983. In his Complaint, Smith claims that the defendants placed him at increased risk of serious physical harm by spreading a rumor among the general inmate population that he is a child molester and subjecting him to inhumane conditions in segregation. (Doc. 1, pp. 3-6). He seeks money damages and injunctive relief in the form a prison transfer. *Id*. at 7.

  The Court is required to promptly screen civil complaints filed by prisoners and dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)-(b). Smith requests expedited review of his Complaint due to the urgent issues set forth therein (*see* Doc. 5). The Court will screen this matter without delay. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012).

1

## The Complaint

Smith organizes the allegations in his Complaint into four separate "complaints," as follows (Doc. 1, pp. 3-6):

**Complaint No. 1**

On February 17, 2023, Officer John Doe 1[1] started a rumor that Smith is a "chomo" (child molester) and threatened to break his jaw. *Id*. at 3. For several weeks, the officer spread this rumor each time he entered Smith's gallery. This prompted threats of violent attacks on Smith by inmates in the general prison population. Officer Doe 1 told Smith that, if and when he got out of segregation, the officer would continue to spread this rumor. Smith asserts that the officer deliberately placed his life at risk by spreading this false information, and Smith received numerous death threats as a result. *Id*.

Smith filed an emergency grievance with Warden Anthony Wills on February 21, 2023, and the warden denied it as a non-emergency. *Id*. at 3-4. Although Smith resubmitted it as a regular grievance, he filed this suit for safety reasons before exhausting his administrative remedies. *Id*. at 4.

**Complaint No. 2**

Officer John Doe 2[2] conspired with Officer Doe 1 to spread the rumor that Smith is a "chomo." For several weeks, Officer Doe 2 did so whenever he entered Smith's gallery. Although Smith was scheduled for release from segregation back into the general inmate population on April 14, 2023, he refused to leave segregation out of fear for his safety. Smith filed a grievance about

---

[1] Smith refers to Officer John Doe 1 as "Officer Kempher" and describes him as the main correctional officer assigned to the showers. *Id*. at 3.
[2] Smith refers to Officer John Doe 2 as "Officer Fred" and describes him as Officer Kempher's partner for shower operations. *Id*. at 4.

the issue in mid-March 2023, and Officer Doe 2 was reassigned to another position a few days later. Smith filed this lawsuit before receiving a response to the grievance. *Id*. at 4.

**Complaint No. 3**

On April 2, 2023, Smith confronted Officer Knight about continuously lying to him, and the officer retaliated by taking away his shower access and shutting off the water to his cell. *Id*. at 5. Since then, Smith has had no running water in his cell. *Id*. And his toilet stopped flushing. As a result, Smith's feces accumulated, fermented, molded, and wreaked. To limit the odor, Smith covered the toilet with his jumpsuit. Instead of the toilet, Smith used his meal tray for bowel movements and then handed his feces-covered trays back to staff for cleaning and reuse, which he describes as biohazardous and degrading. *Id*.

His sink also stopped running. Smith was unable to wash his hands or drink adequate amounts of water. To avoid dehydration, he funneled "drips of water" from the faucet into a cup for drinking. He also urinated directly into the sink. *Id*.

Smith filed an emergency grievance to address this issue on April 4, 2023. The warden received it the next day and denied it as a non-emergency. Officer Knight did not come to work for the next week, and Smith believes he was disciplined. *Id*.

**Complaint No. 4**

Since April 2, 2023, Smith has been stuck in segregation "24/7" in a cell with no bars, a toilet that will not flush, a sink that will not work, no running water, no way to use the toilet, no access to handwashing, no way to brush his teeth, and no access to showers. In addition, lead paint chips fall from the ceiling. Because he is not safe in the general population, given the rumor that he is a "chomo," and is also not safe in segregation, given the deplorable conditions, Smith asks the Court to transfer him to another prison until he is released on parole next year. *Id*. at 6.

**Discussion**

Based on these allegations, the Court divides the *pro se* action into the following counts:

**Count 1:** Officers Doe 1 and 2 created an unnecessary and increased risk of serious physical harm to Smith when they threatened to break his jaw and spread a rumor that he is a "chomo" beginning on February 17, 2023, in violation of the Eighth Amendment.

**Count 2:** Officers Doe 1 and 2 conspired to deprive Smith of his right to be free from cruel and unusual punishment under the Eighth Amendment, when they told inmates he was a "chomo" beginning on February 17, 2023.

**Count 3:** Officers Doe 1 and 2 denied Smith equal protection of the law in violation of the Fourteenth Amendment.

**Count 4:** Officers Doe 1 and 2 defamed (slandered) Smith when they spread a false rumor that he is a "chomo," in violation of Illinois state law.

**Count 5:** Warden Wills violated Smith's right to due process of law by denying his emergency grievance filed February 21, 2023, in violation of the Fourteenth Amendment.

**Count 6:** Officer Knight retaliated against Smith for telling the officer to stop lying by denying Smith shower access and cutting off the water supply to his cell on April 2, 2023, in violation of the Eighth Amendment.

**Count 7:** Officer Knight subjected Smith to unconstitutional conditions of confinement in segregation by cutting off the water supply to his cell and thereby depriving him of use of a sink or toilet, in violation of the Eighth Amendment.

**Count 8:** Warden Wills violated Smith's right to due process of law by denying his emergency grievance filed April 4, 2023, in violation of the Fourteenth Amendment.

**Count 9:** Defendants subjected Smith to unconstitutional conditions of confinement in segregation by confining him 24/7 in a cell with no bars, no water, no showers, no working toilet, no working sink, and peeling lead paint, in violation of the Eighth Amendment.

**Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under *Twombly*.**[3]

### Count 1

Smith claims that Officers Doe 1 (Kempher) and Doe 2 (Fred) created a heightened risk of harm to his physical safety by spreading a rumor that he is a "chomo" and by threatening to break his jaw in the process. The Eighth Amendment governs both claims and prohibits cruel and unusual punishment of incarcerated persons. U.S. CONST., amend. VIII. Consistent with the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). A plaintiff states an Eighth Amendment claim when he sets forth allegations suggesting that he is incarcerated under conditions posing a substantial risk of serious harm and that the defendants acted with deliberate indifference to that danger. *Farmer,* 511 U.S. at 834; *Pinkston*, 440 F.3d at 889. The allegations support a claim in Count 1 against Officers Doe 1 and Doe 2 for putting Smith at an obvious risk of harm by spreading a false rumor that he is a child molester.

### Count 2

Smith also claims that Officers Doe 1 (Kempher) and Doe 2 (Fred) conspired to violate his Eighth Amendment rights by spreading the rumor described above. To pursue a conspiracy claim under § 1983, a plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

437, 441-42 (7th Cir. 1988)). An "express agreement among all the conspirators is not a necessary element of a civil conspiracy." *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) (citation omitted). Rather, participants in a conspiracy must share the "general conspiratorial objective." *Id*. Count 2 survives screening against Officers Doe 1 and 2.

## Count 3

Smith mentions a denial of equal protection, but he has not developed this claim against Officers Doe 1 and 2. The allegations fall short of articulating a plausible claim under the Fourteenth Amendment Equal Protection Clause and *Twombly*. Count 3 shall be dismissed without prejudice.

## Count 4

Smith brings a defamation claim (based on slander) under Illinois law against Officers Doe 1 (Kempher) and Doe 2 (Fred). This claim arises from the same facts as his § 1983 claim. Thus, the Court will exercise supplemental jurisdiction over the claim. 28 U.S.C. § 1367.

Under Illinois law, defamatory statements include slander, when spoken, and libel, when written. A statement is considered defamatory if "it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him or her." *Brennan v. Kadner*, 351 Ill. App. 3d 963 (Ill. App. Ct. 2004). To prove defamation, a plaintiff must show: (1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication (sharing) of the defamatory statement to a third party by the defendant; and (3) publication (sharing) of the defamatory statement damaged the plaintiff. *Id*. (citation omitted). According to the allegations, Officers Doe 1 and 2 spread a false rumor that Smith is a child molester, by repeatedly telling other inmates that he is a "chomo." He suffered damage to his reputation and threats on his life as a result.

Illinois law recognizes certain categories of defamatory statements as actionable *per se*, meaning that damages are presumed and the plaintiff is not required to plead or prove actual damage to his reputation. *Moore v. PETA, Inc.*, 402 Ill. App. 3d 62 (Ill. App. Ct. 2010). Defamatory statements that are deemed actionable *per se* include, among others, those imputing the commission of a crime and those imputing fornication. *See Brennan*, 351 Ill. App. 3d at 968. These statements allegedly made by Officers Doe 1 and 2 fall into one or both of these categories. At this stage, the allegations articulate a claim of defamation against Officers Doe 1 and 2.

### Counts 5 and 8

Smith brings claims against Warden Wills for denying emergency grievances he filed on February 21, 2023, and April 4, 2023. No Fourteenth Amendment due process claim arises from the denial of a grievance, emergency or not. Prison grievance procedures are not constitutionally mandated and do not implicate the Due Process Clause. The mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."[4] *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008). Counts 5 and 8 shall be dismissed with prejudice against Warden Wills.

### Count 6

Smith next claims that Officer Knight retaliated against him for telling the officer to stop lying by denying him shower access and cutting off his water supply. In order to state a claim for

---

[4] Count 5 arises from an emergency grievance filed February 21, 2023, after Officer John Doe 1 spread a rumor that Smith is a "chomo." Smith did not allege that Warden Wills caused, participated in, or directed Officer Doe 1 (or Officer Doe 2) to spread the rumor, so the warden was not involved in the underlying unconstitutional conduct that formed the basis of that emergency grievance. Count 8 arises from the emergency grievance filed April 2, 2023, when Officer Knight told Smith he would be denied shower access and cut off his water. Smith alleges that Warden Wills was aware of and caused him to endure constitutionally objectionable living conditions in segregation, and this conduct forms the basis of a separate claim against the warden in Count 9.

retaliation under the First Amendment, a plaintiff must demonstrate that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendant's actions. *Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012). Smith's allegations fall short of stating a claim here.

Smith has not satisfied the first requirement. His comment to the officer about lying is not constitutionally protected speech. A prisoner's speech is protected by the First Amendment so long as it is expressed "in a manner consistent with legitimate penological interests." *Watkins v. Kasper*, 599 F.3d 791, 795 (7th Cir. 2010). However, an inmate's speech that is rude, disruptive, or disrespectful or that challenges prison staff's authority is not protected. *Id*. at 797–98; *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) ("[b]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected"). Although Smith's emergency grievance about the officer's conduct may constitute constitutionally protected speech, Smith's speech was clearly not thwarted in any way by retaliation of Officer Knight. Smith filed the grievance two days after the officer began withholding shower and water access on April 2, 2023. Count 6 shall be dismissed without prejudice.

**Counts 7 and 9**

Smith complains of inhumane living conditions in segregation. Prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to adverse conditions that deny prisoners "the minimal civilized measure of life's necessities" *Farmer*, 511 U.S. at 834. His lack of water access deprives him of a basic human necessity protected by the Eighth Amendment. Without running water, Smith could not brush his teeth, wash his hands, hydrate, urinate, or defecate safely in his cell, and he had no other way to do so while confined in segregation "24/7" without a functioning sink or toilet. Smith also described peeling lead paint chips, which pose a

risk to his future health or safety. *Farmer*, 511 U.S. at 834 (prison officials violate Eighth Amendment when they demonstrate deliberate indifference to adverse conditions that deny prisoners "the minimal civilized measure of life's necessities"). Counts 7 and 9 shall proceed against Officer Knight, who allegedly cut off Smith's water and denied him showers, and Count 9 shall also proceed against Warden Wills, who knew about, participated in, and/or caused the unconstitutional living conditions. These claims shall be dismissed without prejudice against Officers Doe 1 and 2 for lack of involvement in exposure to these living conditions.

### Doe Defendants

Smith shall be allowed to proceed with certain claims against Officer John Doe 1 (Kempher) and Officer John Doe 2 (Fred). But he must identify these defendants with particularity before they can be served with the Complaint. Smith will have the opportunity to engage in limited discovery to ascertain their identities. Warden Wills (official capacity) shall be responsible for responding to discovery aimed at identifying the unknown defendants. Once their names are discovered, Smith must file a motion to substitute the newly identified defendants in place of the generic designations in the caption and throughout the Complaint.

### Pending Motions

A.   **IFP Motion (Doc. 2)**

Smith filed an application for leave to proceed *in forma pauperis* (Doc. 2), without prepayment of the $400.00 filing fee for this action. Although he discloses his status as a "3-striker," Smith maintains that he is eligible to proceed IFP because he faces imminent danger of serious physical injury. The Court agrees.

A federal court may permit a prisoner who is indigent to bring a "suit, action or proceeding, civil or criminal," without prepayment of fees upon presentation of an affidavit stating the

prisoner's assets together with "the nature of the action . . . and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). In civil actions, a prisoner's affidavit of indigence must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Smith has tendered an affidavit of indigence that is sufficient as to form.

Unless he faces imminent danger of serious physical injury, a prisoner is prohibited from bringing a civil action IFP if the prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Although Smith indicates that he "struck out" before filing this action (*see* Doc. 1, p. 3),[5] Smith's allegations about the conditions of his confinement suggest that he faces imminent danger of serious physical harm sufficient to overcome the three-strikes bar to litigation based on a total lack of access to running water in his cell and his confinement there 24/7. *Id*. The IFP motion is **GRANTED**, and the Court will enter a separate Order assessing Smith's initial partial filing fee.

---

[5] According to the Public Access to Court Electronic Records (PACER) website (www.pacer.gov), Smith has filed at least three prior civil actions that were dismissed as frivolous, malicious, or for failure to state a claim: Case No. 14-cv-2177 (C.D. Ill., dismissed Nov. 14, 2014); Case No. 17-cv-2276 (C.D. Ill. dismissed Nov. 30, 2017); and Case No. 17-cv-2315 (C.D. Ill. dismissed Dec. 21, 2017). *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) (courts can take judicial notice of public records which include court records).

B.     **Motion for Expedited Review/Hearing (Doc. 5)**

Smith's motion for expedited review of this matter is **GRANTED**, but his related request for expedited hearing and an "emergency injunction" is **DENIED** without prejudice because Smith has not stated what emergency relief he wants. The Court needs more information from him. It is unclear whether Smith seeks only running water to his cell and shower access, or protective custody, a prison transfer, or some combination of this relief (or other relief altogether).[6]

It appears that Smith is attempting to file a motion for preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. Smith is invited to do so at any time during the pending action that he requires this relief. He should label the motion, "Motion for Preliminary Injunction (or Temporary Restraining Order) Pursuant to Fed. R. Civ. P. 65" and set forth the *exact* interim relief he seeks and the facts that support his request for relief. Warden Wills is already named as a defendant, in his individual and official capacities, and shall be responsible for carrying out any injunctive relief ordered herein.

## Disposition

**IT IS ORDERED** that the Complaint survives screening under 28 U.S.C. § 1915A, as follows:

- **COUNTS 1, 2,** and **4** against **OFFICER JOHN DOE 1 (KEMPHER)** and **OFFICER JOHN DOE 2 (FRED)**, in their individual capacities;

- **COUNT 7** against **OFFICER KNIGHT**, in his individual capacity;

- **COUNT 9** against **OFFICER KNIGHT** and **WARDEN ANTHONY WILLS**, in their individual capacities.

---

[6] In the Complaint, Smith requests a prison transfer, but this is not relief the Court typically grants at this early stage without a Rule 65 motion supporting such a request. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).

- **WARDEN ANTHONY WILLS** remains named as a defendant, in his official capacity, for purposes of identifying the unknown defendants and carrying out any injunctive relief ordered herein.

**IT IS ORDERED** that **ALL OTHER CLAIMS** against all other defendants are **DISMISSED** for failure to state a claim upon which relief may be granted, including:

- **COUNT 3** against **OFFICER JOHN DOE 1 (KEMPHER)** and **OFFICER JOHN DOE 2 (FRED)** is **DISMISSED** without prejudice;

- **COUNTS 5** and **8** against **WARDEN ANTHONY WILLS** is **DISMISSED** with prejudice;

- **COUNT 6** against **OFFICER KNIGHT** is **DISMISSED** without prejudice.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **WARDEN ANTHONY WILLS (individual and official capacities), OFFICER KNIGHT (individual capacity),** and **OFFICERS JOHN DOE 1 and 2 (individual capacities, once identified):** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Smith. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ORDERED** that, if any defendant can no longer be found at the work address provided by Smith, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**IT IS ORDERED** that if judgment is rendered against Smith, and the judgment includes the payment of costs under Section 1915, Smith will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Smith is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  April 27, 2023

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. You are advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **You do need not submit any evidence to the Court at this time, unless specifically directed to do so.**