IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ADAM SMITH,

      Plaintiff,

v.

KYLAN KNIGHT, ANTHONY WILLS,
JOHN DOE #1, and JOHN DOE #2,

      Defendants.

Case No. 23-cv-1297-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

      Plaintiff Adam Smith, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Smith alleges he is at risk of serious physical harm due to Defendants spreading a rumor about him among the inmate population and subjecting him to inhumane conditions in segregation.

      This matter is before the Court on Smith's motion for preliminary injunction (Doc. 12). He subsequently filed a second motion for preliminary injunction (Doc. 47), judicial notice of evidence (Doc. 48), and an updated status report regarding his conditions in segregation (Doc. 49). Defendants Anthony Wills and Kylan Knight filed a response (Doc. 50) in opposition to the motion. On June 29, 2023, the Court held an evidentiary hearing on the motion.

BACKGROUND

      On April 20, 2023, Smith filed his Complaint alleging that correctional officers at Menard had created an unnecessary and increased risk of harm to Smith and subjected him to unconstitutional conditions of confinement in his cell (Docs. 1, 7). Specifically, he alleged that the two John Doe correctional officers spread a rumor that he was a "chomo" (child molester) to other

inmates in his gallery and threatened to spread the rumor to those in general population if Smith ever left segregation (Doc. 7, p. 2). Further, Smith alleged that on April 2, 2023, he was placed in a segregation cell with no running water. The toilet would not flush, the sink would not work, and he had no way to use the toilet, wash his hands, or brush his teeth (*Id.* at p. 3). He was also denied access to showers. As a result of his cell lacking running water and a working toilet, his feces accumulated and fermented in the toilet (*Id.*). He was ultimately forced to use his meal tray for bowel movements and return the trays to staff for cleaning and reuse (*Id.*).

Smith was allowed to proceed on the following counts:

| | |
|---|---|
| Count 1: | Officers John Doe 1 and 2 created an unnecessary and increased risk of serious physical harm to Smith when they threatened to break his jaw and spread a rumor that he is a "chomo" beginning on February 17, 2023, in violation of the Eighth Amendment. |
| Count 2: | Officers John Doe 1 and 2 conspired to deprive Smith of his right to be free from cruel and unusual punishment under the Eighth Amendment, when they told inmates he was a "chomo" beginning on February 17, 2023. |
| Count 4: | Officers John Doe 1 and 2 defamed/slandered Smith when they spread a false rumor that he is a "chomo," in violation of Illinois state law. |
| Count 7: | Officer Knight subjected Smith to unconstitutional conditions of confinement in segregation by cutting off the water supply to his cell thereby depriving him of use of a sink or toilet, in violation of the Eighth Amendment. |
| Count 9: | Officer Knight and Anthony Wills subjected Smith to unconstitutional conditions of confinement in segregation by confining him 24/7 in a cell with no bars, no water, no showers, no working toilet, no working sink, and peeling lead paint, in violation of the Eighth Amendment. |

(Doc. 7, p. 4).

A. **Smith's Motion and Supplements**

Although Smith sought an "emergency injunction" as part of his request for relief in the Complaint, he did not initially submit a motion for preliminary injunction. Smith also did not explain what emergency relief he sought from the Court (*Id*. at p. 11). Thus, the Court directed Smith to file a formal motion for preliminary injunction setting forth the exact relief he sought (*Id*.).

On May 1, 2023, Smith filed the pending motion for preliminary injunction (Doc. 12), requesting that the water in his sink and toilet be turned back on. He also sought a temporary restraining order against Defendants to prevent retaliation by them due to the filing of his lawsuit (*Id*.). He also sought a transfer out of Menard and to another prison because he felt unsafe at Menard due to the rumors spread that he was a child molester (*Id*. at p. 2). At Menard, Smith alleged he had to continue to refuse housing and remain in segregation or risk being attacked by inmates in general population who believe the rumors spread by Defendants regarding Smith's criminal history (*Id*. at p. 2). He also alleged that John Does 1 and 2 had already threatened him with physical violence and he feared physical retaliation from them now that his lawsuit was pending.

In addition to his requests for relief regarding his conditions and threats faced at Menard, Smith also sought video footage from two security cameras which he believed would substantiate his claims (Doc. 12, p. 1). Smith later sought the preservation of additional video footage from a number of times, dates, and locations at Menard (Doc. 28, 34, 47).

Smith later attempted to submit tangible evidence in the form of mold, requesting that the Court submit the evidence for scientific testing (Doc. 21). The Court denied his request, noting that it neither retains such specimens nor conducts scientific testing for litigants (Doc. 25). Smith also submitted an affidavit from fellow inmate Robert B. See who testified that a correctional

officer told him on May 13, 2023, that he "didn't f**** with that chomo" referring to Smith (Doc. 22, p. 2). See stated that the officer accused Smith of being a child molester (*Id*.).

In subsequent supplements to his motion for preliminary injunction, Smith sought a transfer to another prison. Smith contended that he could never transfer back to general population because a number of inmates had already threatened his life, and the rumors calling him a "chomo" would spread to other inmates in general population (Doc. 24, p. 1). He indicated that he believed inmates in protective custody would put a hit out on him. He noted that many inmates in protective custody were former gang members, and because Smith was not affiliated with a gang, he had no protection in either protective custody or general population (*Id*.). Instead, Smith alleged that he would be forced to remain in segregation until his outdate (*Id*.). He also claimed he could not go to the segregation yard because of the rumors being spread about him. Smith also alleged his "business deals" were ruined because everyone who dealt with him believed the rumors and boycotted him (*Id*. at p. 2). He is unable to trade or barter with other inmates, which he believes is necessary in order to survive in prison. He also indicated that he believed he would be a target for retaliation by other officers working at the behest of Defendants. He alleged in an additional supplement that he was not afforded any opportunity for recreation outside of his cell (Doc. 31).

In Smith's most recent supplement, he alleged that a number of inmates on his gallery had suffered with their water being turned off to their cells (Doc. 48). He mentioned that he had evidence which showed another inmate died of dehydration on June 8, 2023, due to officers turning off the water to that inmate's cell (*Id*. at p. 2; Doc. 49, p. 5). Another inmate moved into cell 401 at the beginning of June 2023, and his water was also turned off until June 9, 2023 (*Id*. at pp. 2-3). Smith acknowledged that his water was turned on as of June 9, 2023, as well (*Id*. at p. 3). He had both cold and hot water (*Id*.). But Smith alleged that he had been without all water since

April 2, 2023, and he only had access to his toilet and a small amount of hot water from May 9, 2023, until June 9, 2023 (*Id*.). Smith alleged he only received showers a few times since April 2, 2023, and only when Officer Knight was not on duty (Doc. 49, p. 2). Smith stated that Knight almost always had him marked off the shower list to prevent the shower officers from letting him out. Smith has refused housing due to the "chomo" rumors and remains in segregation (Doc. 49, p. 1). He claims that he will remain in segregation until transferred to another prison or until his release date of February 16, 2024 (*Id*. at p. 2).

### B. Defendants' Response

According to Defendants, Smith has been housed in the same cell in North Two, gallery four, cell two ("North 2, 4:02") since January 19, 2023 (Doc. 50-1, p. 1; 50-6). Smith has refused housing upon release from segregation and, thus, has remained in segregation. He has refused housing several times including on April 14, 2023, May 5, 2023, May 19, 2023, and June 5, 2023 (Doc. 50-2, p. 5). His gallery is offered showers on Mondays, Thursdays, and Saturdays (Doc. 50-3, p. 2). A "privileges log" book is kept on the gallery showing when privileges, such as showers and yard time, are offered to each inmate (*Id*.). The log indicates that Smith was offered access to the showers 13 times in April 2023 but refused on all but one occasion (Doc. 50-5, pp. 1-17). In May 2023, he accepted all 14 showers offered that month (*Id*. at pp. 17-22). From June 1, 2023, to June 22, 2023, Smith was offered access to the showers on eight occasions and only refused once, on June 1, 2023 (*Id*. at pp. 222-25).

As to the water in his cell, a log is also maintained for the facility indicating when water to certain cells is turned off (Doc. 50-3, pp. 1-2). The privileges log book also indicates when an inmate is on water restrictions, and there is no indication that Smith was on water restrictions in May or the early part of June (Doc. 50-5, pp. 17-25). Toby Mohr, Menard's maintenance

supervisor, testified in an affidavit that he has not received any work orders indicating that Smith's cell lacks water (Doc. 50-4, pp. 1-2).

As for Smith's access to the yard, the privileges log indicates he was offered yard six times in April 2023 and refused each time (Doc. 50-5). He was offered yard 12 times in May 2023 and went to the yard five times (*Id.*). In June, he was offered yard access three times and accepted all three offers (*Id.*).

To the extent that Smith alleges that his cell is contaminated with lead paint, lead paint is not used in the North 2 cellhouse according to Mohr (Doc. 50-4, p. 2). Instead, the prison uses enamel and epoxy paints (*Id.*). Pictures of Smith's cell do show chipping paint on the wall and ceilings (Doc. 50-6).

### C. Evidentiary Hearing

#### 1. *Smith's Testimony*

At the hearing, Smith testified that he was still in segregation but had access to running water and a working toilet. On May 9, 2023, the hot water was turned on and Smith was able to flush the toilet. Officers turned all of the water on in his cell on June 9, 2023.

Smith acknowledged that he has been offered opportunities to leave segregation but chooses to refuse housing in general population because of his belief that inmates will attack him in general population. He has received threats in segregation from inmates who believe the rumors that he is a child molester, and a number of inmates have now boycotted him. Although he does not know how legitimate the threats are, he chooses to remain in segregation to protect himself from those threats. Smith also admitted that he has not requested placement in protective custody but believes that if he transferred to protective custody, another correctional officer would just start rumors about him there.

As to his ability to attend the yard in segregation, Smith acknowledged that he has opportunities to attend the yard but chooses not to go, again because of the rumors about him. Smith testified that he is concerned about his safety and chooses to remain in his cell. He indicated his desire to go to the yard, but he chooses to stay in segregation.

As to his ability to shower, Smith testified that he goes to the showers every time one is offered. He acknowledged receiving showers on May 4, 6, and 13. He could not recall if he received a shower on May 27. He received a shower on June 3, 22, 24, and 27. Smith testified that on June 27, 2023, he was told by John Doe #1 that he would not receive any further showers. Smith stated that John Doe #1 mostly runs the shower line. He later stated that Knight usually denied him showers but allowed him to take a shower on June 22, 2023. Smith testified that he believed Knight allowed him a shower on that occasion because Knight read through his mail and saw that Smith was seeking to obtain video footage that would substantiate his claims against Knight. Smith further testified that he believed IDOC was lying about the availability of video camera footage and also lying about the showers logs. Smith also testified that he believed witnesses were lying about the paint in his cell. Smith believed the paint had to be at least 50 years old due to the fact it was peeling, and that paint of that age had to be lead based.

### 2. *Trevor Rowland*

Major Trevor Rowland, who holds the position of Major of the North 2 Cellhouse, also testified about the conditions of Smith's cell. Rowland testified that anytime water is shut off to an inmate's cell, a notation is placed on the privileges log book. According to those logs, the water to Smith's cell has not been turned off. He further testified that every time a shower is offered to an inmate, that offer and the inmate's response is also placed on the privileges log.

**LEGAL STANDARDS**

A preliminary injunction is an "extraordinary and drastic remedy" for which there must

be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## DISCUSSION

Simply put, Smith fails to meet his burden of showing that he is entitled to a preliminary injunction. Again, a preliminary injunction is an extraordinary remedy and the bar for

demonstrating the need for such relief is a high one. It is clear from the evidence in the record and the testimony that Smith has not met that burden. He acknowledged at the hearing that he has access to running water, a working toilet, and access to showers. He also is offered access to the yard. Although he claims his cell has lead paint, he offers no evidence beyond his own opinion that the paint is lead because it looks old.

Further, his placement in segregation is of his own making. Smith admits that he has chosen on numerous occasions to refuse housing in general population and has refused access to the yard while in segregation. Although Smith claims that he faces threats if he is placed in general population, those threats are vague and unsubstantiated. Smith merely testified that several inmates have threatened him, but he does not know how legitimate those threats are should he leave his cell. He has not sought to be placed in protective custody. His reasoning for declining to seek protective custody is even more vague. Smith testified that he believes another correctional officer would just spread rumors about his criminal history in that cellhouse or any cellhouse to which he transfers. But he fails to offer any evidence to substantiate his claim that every officer at Menard would spread rumors about him to other inmates. Because Smith chooses to remain in segregation, in his cell, there is no evidence to support his contention that Defendants are the cause of the conditions he currently faces.

Smith also fails to point to any evidence in the record to support his contention that he has been denied access to showers in the past. The logs all show that Smith has been offered showers on many occasions in recent months. Although he contends that he would never refuse a shower and that Defendant Knight forges the records, he also acknowledged that Knight was the officer on duty on June 22 when he received a shower. His theory that Knight secretly read Smith's mail and realized that Smith was seeking video footage that would reveal Knight's nefarious actions is fantastical and unsupported by any evidence in the record. Further, despite

his testimony regarding his previous access to various amenities, Smith acknowledged that he currently has access to the showers, yard, running water, and a working toilet. Thus, he is not entitled to injunctive relief at this time.

## CONCLUSION

For the reasons stated above, Smith's motions for preliminary injunction (Docs. 12, 47) are **DENIED**.

**IT IS SO ORDERED.**

**DATED:  June 30, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**