IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| ADAM SMITH, #S15953 | ) ) ) | |
| Plaintiff, | ) ) | Case No. 23-cv-1297-RJD |
| v. | ) ) | |
| KYLAN KNIGHT, ANTHONY WILLS, JUSTIN KEMPFER, and MATTHEW FRED, | ) ) ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, currently incarcerated within the Illinois Department of Corrections at Lawrence Correctional Center, filed this lawsuit pursuant to 42 U.S.C. §1983. Doc. 1. He alleges that Defendants defamed him and violated his Eighth Amendment rights at Menard Correctional Center ("Menard") by subjecting him to inhumane conditions in segregation and spreading rumors that he is a child molester ("chomo"). Doc. 146. Following a threshold review conducted pursuant to 28 U.S.C. §1915 and rulings on multiple motions for leave, Plaintiff's case currently consists of the following claims in his Second Amended Complaint (Doc. 146):

| | | |
|---|---|---|
| | Count 1: | Officers Kempfer and Fred created an unnecessary and increased risk of physical harm to Smith when they threatened to break his jaw and spread a rumor that he is a "chomo" beginning on February 17, 2023 in violation of the Eighth Amendment. |
| | Count 2: | Officers Kempfer and Fred conspired to deprive Smith of his right to be free from cruel and unusual punishment under the Eighth Amendment when they told inmates he was a "chomo" beginning on February 17, 2023. |
| | Count 4: | Officers Kempfer and Fred defamed (slandered) Smith when they spread a false rumor that he is a "chomo" in violation of Illinois state |

law.

Count 7: Officer Knight subjected Smith to unconstitutional conditions of confinement in segregation by cutting off the water supply to his cell and thereby depriving him of use of a sink or toilet, in violation of the Eighth Amendment.

Count 9: Officers Knight and Warden Wills subjected Smith to unconstitutional conditions of confinement in segregation by confining him 24/7 in a cell with no bars, no water, no showers, no working toilet, no working sink, and peeling lead paint, in violation of the Eighth Amendment.

Count 10: Warden Wills failed to protect Plaintiff from a substantial risk of serious harm after learning that Defendant Kempfer was going to break Plaintiff's jaw, in violation of the Eighth Amendment.

Count 11: Warden Wills failed to protect Plaintiff from a substantial risk of serious harm after learning that Defendant Kempfer or Fred told other inmates that Plaintiff is a "chomo", in violation of the Eighth Amendment.

Defendants filed a Motion for Summary Judgment, attaching evidence that reflects Plaintiff failed to exhaust administrative remedies prior to filing this lawsuit. In his objections to Defendants' Motion, Plaintiff acknowledges that the only administrative remedy action he took prior to filing suit was to submit emergency grievances at Menard. Docs. 186, 201. The warden determined those grievances did not constitute emergencies and returned the grievances to Plaintiff. Doc. 201, p. 1. At that point, Plaintiff contends, the grievance system was unavailable to him "because grievances take at least six months to fully exhaust and I did not have time to risk my life…waiting six months or more for the ARB to process them." *Id*. Then, after Plaintiff filed suit, he explains that he continued to attempt to submit the grievances to the grievance officer at Menard and the Administrative Review Board. *Id*., p. 5.

**Exhaustion Requirements**

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative

remedies prior to filing lawsuits in federal court. Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident or problem to his or her institutional counselor. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If more than sixty days has passed since the discovery of the incident or problem, the grievance will still be considered if the inmate can demonstrate good cause for the lapse of time. *Id*. §504.810(a).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id*. § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may also request that the prison treat his grievance as an emergency "by forwarding the grievance directly to the Chief Administrative Officer." *Id*. at § 504.840(a). The Chief Administrative Officer decides whether there is "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and, if so, expedites processing. *Id*. at § 504.840(a)-(b). If the Chief Administrative Officer finds that the grievance does not constitute an emergency, the inmate "shall be notified in writing that he…may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*. at § 504.840(c).

### *Pavey* hearing

On July 8, 2025, the Court held an evidentiary hearing on the "debatable factual issue" of whether administrative remedies were available to Plaintiff prior to filing suit. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Plaintiff testified at the Pavey hearing and his testimony is summarized below in comparison with his grievance records.

Defendants called Sarah Quick to testify. Ms. Quick was a "counselor II" in 2023 at Menard. She is currently the grievance officer at Menard. She testified that in 2023, if an inmate submitted a grievance as an emergency and the Warden determined it was not an emergency, then it was returned to the inmate to be submitted to his counselor. Defendants also called Travis Baylor to testify regarding Plaintiff's grievance records maintained by the ARB.

### Allegations in the Second Amended Complaint, procedural history of this case, and Plaintiff's *Pavey* hearing testimony

Plaintiff alleges that on or about February 17, 2023, Defendant Kempfer (a correctional officer) "became very belligerent and hostile against me threatening multiple times to break my jaw and spreading slanderous lies and rumors to all the inmates that I was a chomo (child

molester)." Doc. 146, p. 3. Once Plaintiff was released from segregation, Kempfer was going "to spread the word" that Plaintiff was a chomo. *Id*. Plaintiff submitted an emergency grievance which was assigned #238-2-23 (hereinafter, the "rumor/jaw grievance"). *Id*., p. 17. That grievance is attached to the Second Amended Complaint and is dated February 17, 2023. *Id*. In the narrative section, Plaintiff described the following incident:

> Today on Friday 2/17/23 2nd shift I don't know the C.O.'s name or number…after he passed out dinner trays he announced to everyone that he came up short on 3 trays 3 juice and 3 pairs at the end and needed more brought in for the last 3 cells. When he started picking up trays after he picked up mine I told him "next time you do count don't get your count wrong next time and you won't come up short on trays." I wasn't being disrespectful or anything just matter of fact speaking. Immediately he started cussing me and threatening multiple times that he would break my jaw and then started sexually harassing me…and calling me a pedophile…then an hour or 2 later when he brings the phones out I was laying in bed and he looks in my window and says to me "you're not getting the phone…and I'm going to spread the word wherever you go when you get out of seg and if you go to p.c.…that you're a pedophile"….[A]nother inmate asks… "is he really a child molester" and [the correctional officer] tells him yes. It's a known fact that child molesters are targeted by everyone and ha[ve] to be in p.c. for physical protection. This C.O. is deliberately putting my life in danger by spreading lies to all the inmates that I'm a pedophile and also telling them that I come from protective custody….It should be noted that because I was wrongly denied the phone I cannot call PREA about the sexual harassment.
>
> Give me an emergency transfer to another facility for me personal physical safety and security due to substantial risk of imminent violent attacks.

*Id*., pp. 17-18. Defendant Wills (the Warden) determined the grievance was not an emergency on February 22, 2023. *Id*., p. 17.

Kempfer was occasionally assigned to Plaintiff's gallery over the next few weeks and on each occasion, Kempfer "would continue pushing his false rumors" and "every once in a while" deny Plaintiff a shower. *Id*., p. 3. Defendant Fred "was Kempfer's porter for running showers."

Id., p. 4. Fred also spread the false rumors about Plaintiff. *Id*. At the *Pavey* hearing, Plaintiff testified that he submitted a grievance regarding Defendant Fred on March 16, 2023. Plaintiff forgot to mark it as an emergency; it was assigned grievance no. 269-3-23 (hereinafter, the "Fred" grievance). A few days later, Fred was reassigned to a different location. *Id*.

Plaintiff alleges that on April 2, 2023, Defendant Knight "became belligerent towards me after I confronted him about continuously telling me lies" and told Plaintiff that he was going to make sure Plaintiff "never got to take another shower in seg again and then went behind my cell and shut off the water to both my sink and toilet." *Id*., p. 5. Plaintiff had "to learn to funnel drips of water into a cup from the sink in order to not die of thirst," urinate in the sink, and defecate on food trays. *Id*. Also, the paint in his cell was peeling and falling from the ceiling and it contained lead. *Id*., p. 6.

Plaintiff filed an emergency grievance regarding the lead paint and lack of water issue on April 4, 2023; the grievance was assigned #43-4-23 (hereinafter, the paint/water grievance). *Id*. At the *Pavey* hearing, Plaintiff testified that this grievance was "the most crucial to him." Defendant Wills determined the grievance was not an emergency on April 6, 2023 and Plaintiff was instructed to "submit this grievance according to standard grievance procedure." *Id*., p. 23.

Plaintiff's time in segregation ended on April 14, 2023, but because of the "chomo" rumors he had to stay in segregation for his own safety. *Id*., p. 4. Plaintiff's counselor received the rumor/jaw grievance on April 14, 2023 and responded on April 24, 2023, explaining that individuals who were classified as maximum security or placed in restrictive housing could not request transfers, and noting Plaintiff was classified as maximum security level and was in restrictive housing. *Id*., p. 17. Plaintiff testified that after he received the counselor's response dated April 24, 2023, he sent the grievance to the grievance officer, but never received a response.

Page **6** of **13**

Plaintiff filed this lawsuit on April 20, 2023. Doc. 1. Chief Judge Rosenstengel conducted a threshold review of Plaintiff's original Complaint on April 27, 2023, allowing him to proceed on his Eighth Amendment claims against Defendants Knight, Wills, Fred, and Kempfer and the slander claim against Defendants Fred and Kempfer. Defendant Wills executed a waiver of service for this case on that same date. Doc. 10. Meanwhile, Plaintiff's counselor received the paint/water grievance and responded on April 28, 2023 that "water is turned on." Doc. 146, p. 23.

Plaintiff filed a Motion for Preliminary Injunction on May 1, 2023; on May 9, 2023, Chief Judge Rosenstengel ordered Defendant Wills to respond to the motion by May 23, 2023. Docs. 12 and 18. Defendants Wills did not respond by that deadline. Chief Judge Rosenstengel then ordered Defendants to respond to the Motion for Preliminary Injunction by June 22, 2023 and set a hearing for June 29, 2023. Docs. 18 and 32. At the hearing, Plaintiff testified that "his water was turned on as of June 9, 2023." Doc. 61, p. 4. Chief Judge Rosenstengel denied the Motion for Preliminary Injunction on June 30, 2023, noting that preliminary injunctive relief is an extraordinary remedy "and the bar for demonstrating the need for such relief is a high one." Doc. 61, p. 9. Plaintiff had not demonstrated that such an extraordinary remedy was necessary, having acknowledged at the hearing that he had access to running water, a working toilet, showers, and the yard. *Id*. Despite the "chomo" rumors, Plaintiff had not sought placement in protective custody. *Id*.

Regarding the paint/water grievance, the grievance officer recommended that it be denied on July 7, 2023, finding that the "water log does not reflect [Plaintiff's] water was turned off for the month of April 2023" and "work order placed regarding peeling paint. Menard CC does not use lead based paint." Doc. 146, p. 21. On July 13, 2023, Defendant Wills concurred with the

grievance officer's recommendation to deny the grievance. *Id*., p. 21. At the Pavey hearing, Plaintiff testified that he appealed the grievance to the ARB on July 24, 2023, but it was "illegally seized by the mailroom" along with grievance #219-4-23 which mentioned lead paint and the lack of water in his cell (hereinafter, the "second paint/water" grievance). Doc. 205, pp. 20-23. The Warden denied the second paint/water grievance on July 13, 2023 (the same date that he denied the first paint/water grievance). *Id*.

The Fred grievance was not attached to Plaintiff's Second Amended Complaint, nor submitted with Defendants' Motion for Summary Judgment. Plaintiff testified at the Pavey hearing that he submitted it on March 16, 2023 at Menard, and then appealed to the ARB within 30 days of receiving the Warden's response. After the *Pavey* hearing, Plaintiff filed a pleading titled "Additional Argument" that includes the Fred grievance. *Id*., pp. 8-13. The grievance is dated March 16, 2023 and the counselor responded on April 10, 2023. *Id*., p. 11. The grievance officer recommended denial on July 25, 2023 and the Warden concurred on July 27, 2023. *Id*., p. 8.

Plaintiff's claims against Warden Wills are based on Warden Wills' review of grievances paint/water grievance and the rumor/jaw grievance. Doc. 146, pp. 7-8. Plaintiff contends that because those grievances informed Warden Wills that Defendants Kempfer and Fred had spread the "chomo" rumors, and that Plaintiff had no running water and was exposed to lead paint, Warden Wills' refusal to intervene violated Plaintiff's Eighth Amendment rights. *Id*.

## Discussion

The Court considered the evidence presented at the Pavey hearing and in the parties' filings and concludes that Plaintiff did not exhaust his administrative remedies regarding the allegations in this case prior to filing suit on April 20, 2023. Plaintiff testified that he submitted four

grievances regarding the allegations in this lawsuit: (1) grievance # 238-2-23 (the rumor/jaw grievance); (2) grievance # 269-3-23 (the Fred grievance); (3) grievance no. 43-4-23 (the paint/water grievance); and (4) grievance no. 219-4-23 (the paint only grievance).  None of these grievances sufficed to exhaust Plaintiff's administrative remedies.  Plaintiff filed suit before he received the counselor's responses to the rumor/jaw grievance and the paint/water grievance and before he received the Warden's responses to the paint only grievance and the Fred grievance.

However, Defendants' evidence and arguments at the *Pavey* hearing do not address the primary issue raised by Plaintiff's Response to their Motion for Summary Judgment: whether administrative remedies were available to Plaintiff on April 20, 2023 (the date he filed suit) at Menard, despite the imminent danger he allegedly faced.  Plaintiff acknowledges there is no imminent danger exception to the exhaustion requirement.  He contends that no administrative remedies were available to him when he filed suit because Defendants Wills refused to process his grievances as emergencies, despite the imminent risk of serious physical harm he faced because of Defendants' alleged violations of his Constitutional rights.  Plaintiff points to this Court's ruling on his Motion to Proceed in forma pauperis for support for this argument. Chief Judge Rosenstengel allowed Plaintiff to proceed in this matter without first paying the filing fee, finding that he had adequately alleged that he faced imminent danger of serious physical harm by alleging that he was confined 24/7 in a cell with no running water.[1]   Doc. 7, p. 10.

The Seventh Circuit Court of Appeals has clarified the distinction between allowing an inmate to proceed in forma pauperis (despite having incurred three strikes) because he alleges an

---

[1] Without alleging an imminent danger of serious physical harm, Plaintiff is subject to the "three strikes rule" that prohibits him from bringing any more civil action[s] in forma pauperis because he previously filed at least three cases in forma pauperis that were dismissed as frivolous, malicious, or for failure to state a claim.  28 U.S.C. §1915(g); Doc. 1, p. 3; Doc. 7, p. 10, f.n. 1.

imminent danger of serious physical harm versus holding the inmate to the exhaustion requirement, despite that same alleged danger:

> Exhaustion is explicitly required by the Prison Litigation Reform Act…and there is no exception for prisoners who allege "imminent danger" in order to be excused from having to pay the entire filing fee at the time the suit is brought. Imminent danger excuses *only* that, and not the duty to exhaust as well.
>
> Even so, if there are no administrative remedies, then of course there's nothing to exhaust. And we think it's also true that there is no duty to exhaust, in a situation of imminent danger, if there are no administrative remedies for warding off such a danger. Although there is no "futility" exception to a prisoner's duty to exhaust, futility is not the same as unavailability. If a prisoner has been placed in imminent danger of serious physical injury by an act that violates his constitutional rights, administrative remedies that offer no possible relief in time to prevent the imminent danger from becoming an actual harm can't be thought available. Suppose the prison requires that its officials be allowed two weeks to respond to any prisoner grievance and that before the two weeks are up there can be no action taken to resolve it. An administrative remedy could not be thought available to a prisoner whose grievance was that he had been told that members of the Aryan Brotherhood were planning to kill him within the next 24 hours and the guards were refusing to take the threat seriously.

*Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1173-74 (7th Cir. 2010) (internal citations and quotations omitted). Here, despite Defendants' failure to address Plaintiff's argument, the record nonetheless reflects that administrative remedies were available to Plaintiff on Counts 1, 2, 4, 10 and 11 (involving the "chomo" rumors and threats to break Plaintiff's jaw). Plaintiff submitted two grievances regarding these allegations, and neither was treated as an emergency. Nonetheless, Plaintiff's jaw was never broken, nor was he attacked by other inmates for being a "chomo", though months passed before Plaintiff received a response from the counselor and then the grievance officer and the warden.

The undersigned is not discounting or discrediting the problems Plaintiff allegedly faced in segregation starting February 17, 2023 (when Defendants Fred and Kempfer threatened to break Plaintiff's jaw and spread the "chomo" rumors). However, the undersigned cannot ignore the obvious: administrative remedies were available to Plaintiff at Menard regarding these allegations, though his grievances were responded to neither quickly nor favorably. After receiving the Warden's decision on these grievances, Plaintiff testified that he tried to appeal to the ARB, but his mail was intercepted. Regardless, Plaintiff did not attempt to appeal the grievances to the ARB until after he filed suit, so it is unnecessary for the undersigned to determine whether the appeal process was available to Plaintiff.

As for Counts 7 and 9, Plaintiff alleges that he had no running water in his cell starting on April 2, 2023. He filed suit eighteen days later and was allegedly funneling drips of water in his cell to drink; he contends that he had to file suit because his life was in danger and Defendant Wills denied him the opportunity to utilize the emergency grievance process. He could not wait for the non-emergency grievance process to take its course (approximately three months at Menard, and possibly more time to appeal to the ARB) because he did not have reliable or adequate access to clean water. Plaintiff explains that his water was turned on only after Chief Judge Rosenstengel ordered Defendant Wills to respond to Plaintiff's Motion for Preliminary Injunction. Plaintiff's testimony creates a genuine issue of material fact as to whether the administrative process was unavailable to Plaintiff when he filed suit on April 20, 2023 for Counts 7 and 9. Defendants provide no argument or evidence for the Court to question the credibility of Plaintiff's testimony or otherwise find that the grievance process was available to Plaintiff regarding his access to water in April 2023. Defendants have therefore failed to meet their burden on summary judgment for Counts 7 and 9 regarding Plaintiff's access to water.

Plaintiff's allegations regarding peeling lead paint in his cell and "lack of bars" are included within Count 9. While the Court can reasonably infer the urgency and risk caused by Plaintiff's lack of access to water, and therefore infer that the non-emergency grievance process was not available to resolve Plaintiff's water issue, the same cannot be said for the alleged lead paint and lack of bars in Plaintiff's cell. While the Court can infer that exposure to lead paint is harmful, nothing in the record suggests that the lead paint created a risk of harm to Plaintiff so urgent as to render the non-emergency grievance process unavailable. Therefore, Count 9 proceeds against Defendants Kempfer and Wills regarding Plaintiff's alleged lack of water but is otherwise dismissed.

**Conclusion**

Defendants' Motion for Summary Judgment (Doc. 171) is GRANTED IN PART AND DENIED IN PART. Summary judgment is GRANTED in favor of Defendants Kempfer and Fred and against Plaintiff on Counts 1, 2, and 4. Defendants' Motion for Summary Judgment on Count 7 is DENIED. Defendants' Motion for Summary Judgment on Count 9 is GRANTED in favor of Defendants Knight and Wills as to Plaintiff's allegations regarding lack of bars and peeling lead paint. Defendants' Motion for Summary Judgment on Count 9 is otherwise DENIED. Summary judgment is GRANTED in favor of Defendant Wills on Counts 10 and 11. Counts 1, 2, 4, 10 and 11 are DISMISSED WITHOUT PREJUDICE. Count 9 is DISMISSED WITHOUT PREJUDICE regarding Plaintiff's allegation that his cell had peeling lead paint and no bars. The Clerk of Court is directed to enter judgment accordingly at the close of the case.

This case proceeds on the two following claims:

> Count 7:    Officer Knight subjected Smith to unconstitutional conditions of confinement in segregation by cutting off the water supply to his cell and thereby depriving him of use of a sink or toilet, in violation of

the Eighth Amendment.

Count 9:   Officers Knight and Warden Wills subjected Smith to unconstitutional conditions of confinement in segregation by confining him 24/7 in a cell with no water, no showers, no working toilet, and no working sink, in violation of the Eighth Amendment.

By separate Order, the Court will enter a Scheduling Order for discovery on the merits of Plaintiff's remaining claims.

**IT IS SO ORDERED.**

**DATED:   July 21, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**